UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY WAYNE JONES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. LEWIS, et al.,<br><br>　　　　Defendants. | No. 2:17-cv-2002 DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## I. Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

At all times relevant to this action, plaintiff was a state inmate housed at California State Prison in Sacramento, California ("CSP-Sac"). Plaintiff names as defendants Correctional Officer

("CO") J. Lewis, CO M. Swain, Sergeant B. Cross, CO K. Lesmeister, CO M. Surace, CO P.P. Lelis, CO E. Rodriguez, CO J.M. Leathem, CO W. Richardson, Sergeant T. Gomez, Sergeant E. Baker, Sergeant M. Jones, Sergeant J.F. Robichaud, Lieutenant B. Johnson, Licensed Vocational Nurse ("LVN") K. Long, Registered Nurse ("RN") J. Maalihan, Dr. J. Ma, and Warden J. Macomber. All defendants are sued in their individual capacity, with Dr. Ma and Warden Macomber also sued in their official capacity. Plaintiff seeks injunctive relief, declaratory relief, and damages.

Plaintiff's allegations, which are set forth in a highly detailed 155-paragraph complaint, may be fairly summarized as follows:

### A. Cell Move

Before initiating this action, plaintiff filed another § 1983 lawsuit against unidentified CSP-Sac staff members[1] ("the first lawsuit"). In retaliation for the first lawsuit, CO Lewis threatened to move plaintiff from his assigned lower bunk to another cell with a mentally ill inmate for a "gladiator type" cell move.

In response to CO Lewis's threat, plaintiff submitted a CDCR 22 form on November 13, 2015. CO Lewis, in turn, moved plaintiff later that day from a cell with a lower bunk assignment to a cell with an upper bunk assignment. CO Swain and Sgt. Cross participated in this retaliatory cell move by falsifying documentation; manipulating plaintiff's custody level, work assignment and medical status; and discontinuing plaintiff's lower bunk chrono.

### B. Upper Bunk Assignment

When CO Lewis directed plaintiff to pack his belongings for the cell move, plaintiff told him that he had a pre-existing medical condition and a long history of seizure disorder and physical disabilities, meaning plaintiff would not be physically capable of occupying an upper bunk. CO Lewis responded, "That's not my problem, you [PLAINTIFF] should have thought about that before." Plaintiff then repeated this information to CO Swain, Sgt. Cross, and Lt. Johnson. After discussing the issue amongst themselves, CO Cross told plaintiff that he would be

---

[1] It is not clear if any of the named defendants in this case are a party to the first lawsuit.

issued a Rules Violation Report ("RVR") and housed in administrative segregation if he refused the move.

Plaintiff arrived at his new cell and learned that his cellmate also had a lower bunk chrono. Plaintiff provided CO Lesmeister with a copy of his more recent lower bunk chrono, but this defendant ignored him. Plaintiff also informed defendants Richardson and Leathem that, due to his medical condition, he was physically incapable of occupying an upper bunk. These defendants responded that plaintiff's cell move was a "Second Watch" issue.

Plaintiff then sought the assistance of medical staff, who provided plaintiff with additional documentation of his lower bunk chrono that was effective through May 4, 2016. Plaintiff gave this information to defendants Richardson, Leathem, Rodriguez, Cross, and Gomez. Each of these defendants declined to assist plaintiff. When plaintiff threatened to submit an inmate grievance against them, they responded with "you should do whatever you need to do." Over the course of the next few days, plaintiff again complained to defendants Rodriguez, Gomez, Cross, and Swain of his medical chrono and problems with his upper bunk assignment to no avail.

On December 6, 2015, plaintiff fell while attempting to climb into the upper bunk, striking his head and being rendered unconscious. When he awoke, he was taken to the medical clinic where he was questioned by defendant Long. Long, however, did not get an opportunity to treat plaintiff because defendant Baker ordered him back to his cell. Upon his return to his cell, plaintiff began vomiting.

Later that same day, plaintiff suffered a seizure and fell from his upper bunk. When plaintiff's cellmate called "Man Down," defendant Surace appeared and said she would inform her supervisor since she needed to finish her count. Plaintiff stayed on the cell floor all night despite Surace walking by to conduct counts several times that night.

The next day, plaintiff's cellmate put cardboard on the window to gain attention of staff to help plaintiff. When Surace and Jones arrived at the cell to have the window covering removed, they were informed that plaintiff had been on the floor all night and needed medical attention. They ignored this information. Later, defendant Lelis appeared at the cell and sounded a code for a medical emergency. Custody and medical staff responded, including defendant Baker who

grabbed plaintiff around both ankles and violently dragged him from inside the cell to outside of it.

Plaintiff was again taken to the medical clinic where he was briefly questioned by defendant Maalihan. Maalihan did not evaluate or otherwise assess plaintiff, and defendant Baker ordered plaintiff to again return to his cell.

Plaintiff was finally reassigned to a lower back following the intervention of the Facility Captain.

As a result of the fall, plaintiff suffered pain in his neck and head that radiates out to his back and hips.

**C. Medical Care**

Prior to the December 6, 2015, fall, defendant Ma improperly discontinued plaintiff's anti-seizure medication without substitute, and he repeatedly refused to treat plaintiff's chronic pain and pre-existing shoulder and knee injury.

After the fall discussed above, Ma merely examined plaintiff and scheduled him for a follow-up visit.

On January 27, 2016, Ma scheduled plaintiff for a MRI of his left shoulder and prescribed pain medication (Tylenol with Codeine). The MRI revealed that plaintiff was suffering from a chronic shoulder injury.

Over the next few months, Ma repeatedly prescribed and then either reduced or discontinued plaintiff's pain medication, often without notice and/or evaluation. On January 16, 2016, Ma re-prescribed plaintiff's anti-seizure medication. After numerous complaints, plaintiff's pain medication was renewed on November 7, 2016.

On November 10, 2016, defendant Lelis denied plaintiff's emergency request for medical attention. This was done in retaliation for plaintiff filing grievances. Plaintiff was thus forced to return to his cell in pain and suffering seizure-like symptoms. Thereafter, plaintiff suffered a mild but long-lasting seizure.

////

////

**D. Inmate Grievances**

    **a. Appeal 3845**

Plaintiff filed several grievances in response to the defendants' conduct. His first, assigned Log No. SAC-C-15-03845 ("Appeal 3845"), concerned Lewis's threat to move plaintiff to another cell for filing the first lawsuit. Cross reviewed this appeal at the first level of review and ultimately denied it after refusing to sign or accept plaintiff's CDCR 22 form in support of his claims. This appeal was ultimately denied at the third level of third.

    **b. Appeal 4261**

Plaintiff next filed an inmate grievance, assigned Log No. SAC-C-15-04261 ("Appeal 4261"), accusing defendants Lewis, Swain, Cross and Johnson of a retaliatory cell move and accusing Richardson, Leathem, Rodriguez, Gomez, Robichaud, and Ma of deliberate indifference. This appeal was partially granted at the first level of review by Sergeant Scruggs; Associate Warden Lynch signed off on this decision. Lt. Boe then denied it at the second level of review, and Macomber signed off on this decision. This appeal was ultimately denied at the third level of third.

    **c. Appeal 0026**

Plaintiff filed an inmate grievance, assigned Log No. SAC-C-16-00026 ("Appeal 0026"), concerning his December 6, 2015, fall. Appeal 0026 was denied at the first level of review by Sergeant Cook and Associate Warden Lynch. It was then denied at the second level of review by Associate Warden Baughman. This appeal was ultimately denied at the third level of third. Plaintiff accuses Baker of threatening him in response to this grievance.

    **d. Appeal 1466**

On April 12, 2016, plaintiff filed an inmate grievance, Appeal Log No. SAC-C-16-01466 ("Appeal 1466"), concerning allegedly falsified documents created by defendant Rodriguez. This appeal was ultimately denied at the third level of review.

////

////

////

### e. Appeal 4210

Plaintiff filed an inmate grievance, assigned Log No. SAC-C-16-0420 ("Appeal 4210"), concerning Lewis's retaliatory conduct. This appeal was ultimately denied at the third level of review.

### E. Claims and Relief

Based on these allegations, plaintiff brings the following claims:

- a First Amendment retaliation claim against Lewis, Swain, Cross, Rodriguez, and Baker;
- an Eighth Amendment failure to protect claim against Lewis, Swain, Cross, Lesmeister, Surace, Lelis, Rodriguez, Leathem, Richardson, Gomez, Baker, Jones, Robichaud, Johnson, Long, Maalihan, Ma, and Macomber;
- an Eighth Amendment medical indifference claim against Lewis, Swain, Lesmeister, Surace, Lelis, Rodriguez, Leathem, Richardson, Cross, Gomez, Baker, Jones, Robichaud, Johnson, Long, Maalihan, Ma, and Macomber;
- a Fourteenth Amendment due process claim against Lewis, Swain, Cross, Lesmeister, Surace, Lelis, Rodriguez, Leathem, Richardson, Gomez, Baker, Jones, Robichaud, Johnson, Long, Maalihan, Ma, and Macomber;
- a Fourteenth Amendment equal protection claim against Lewis, Swain, Cross, Lesmeister, Surace, Lelis, Rodriguez, Leathem, Richardson, Gomez, Baker, Jones, Robichaud, Johnson, Long, Maalihan, Ma, and Macomber; and
- a conspiracy claim pursuant to 42 U.S.C. §§ 1985(3) and 1986 against Lewis, Swain, Cross, Rodriguez, and Johnson.

By way of relief, plaintiff seeks injunctive relief to include the requirement that all staff honor his lower and upper bunk chronos and that he be provided with adequate means to climb in and out of upper bunks; declaratory relief; and damages.

////
////
///

# IV. Discussion

## A. Rule 8's Brevity Requirement

Plaintiff's complaint is 155 paragraphs of incredibly detailed—oftentimes unnecessarily excessive—factual allegations asserted against 19 defendants. Generally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969)); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written ... prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming a dismissal with prejudice for failure to comply with Rules 8(a) and 8(e), finding that both the original complaint and an amended complaint were "verbose, confusing and conclusory").

In McHenry, the Ninth Circuit affirmed the Rule 8 dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant" and provided an example of a properly pleaded claim, which could be "read in seconds and answered in minutes." 84 F.3d 1177-78. That is not how plaintiff's complaint reads here. To the contrary, plaintiff's 155-paragraph complaint required this Court to dedicate an unusually long time to determine what exactly plaintiff was alleging against each individual defendant. Not only are this Court's resources already strained from the workload in one of the busiest districts in this county, but it has taken away from the Court's ability to dedicate time and resources to other, equally important cases. Should plaintiff decide to amend his complaint, he is hereby forewarned that his allegations must indeed comply with Rule 8 lest the amended pleading be dismissed.

////

////

**B. Eleventh Amendment Immunity**

Plaintiff brings this action against Ma and Macomber in their individual and official capacities. Plaintiff, who seeks damages and injunctive relief, is hereby informed that "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dep't. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003). Thus, plaintiff may only proceed against the defendants in their individual capacities for monetary damages and in their official capacities for injunctive relief.

**C. Supervisory Liability**

Any claim asserted against a supervisory defendant based solely on his or her supervisory status necessarily fails. This is because liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Plaintiff may also allege the supervisor "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted).

**D. First Amendment Retaliation**

  **a. Legal Standard**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff must allege facts that support a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Health City School Dist. Bd. of Educ. v. Doyle, 419 U.S. 274, 287 (1977)). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

### b. Analysis

Plaintiff has sufficiently alleged a First Amendment retaliation claim against Lewis, Swain, Cross, Rodriguez, and Baker. He contends that, in retaliation for filing another complaint and/or a grievance, CO Lewis threatened to move—and then did move—plaintiff from his assigned lower bunk to an upper bunk in another cell. Then, in response to a grievance plaintiff filed regarding CO Lewis's threat, CO Swain and Sgt. Cross participated in the retaliatory cell move by falsifying documentation; manipulating plaintiff's custody level, work assignment and medical status; and discontinuing plaintiff's lower bunk chrono. These allegations are sufficient to state a claim.

### E. Eighth Amendment Failure to Protect

### a. Legal Standard

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable

measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

### b. Analysis

Plaintiff summarily asserts a failure to protect claim against Lewis, Swain, Cross, Lesmeister, Surace, Lelis, Rodriguez, Leathem, Richardson, Gomez, Baker, Jones, Robichaud, Johnson, Long, Maalihan, Ma, and Macomber. None of the allegations in the complaint, however, satisfy the requirements set forth above. To the extent plaintiff accuses the defendants of failing to protect him from a fall due to his assignment to an upper bunk despite a medical order that plaintiff be assigned a lower bunk, these allegations are more properly asserted as an Eighth Amendment medical indifference claim, discussed infra.

### F. Eighth Amendment Medical Indifference

### a. Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.Dated:

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

11

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004). To prevail on an Eighth Amendment claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### b. Analysis

Plaintiff alleges that he had a valid medical chrono for a lower bunk; that he made Lewis, Swain, Cross, Lesmeister, Johnson, Rodriguez, Leathem, Richardson, and Gomez aware of this medical chrono and his inability to safely occupy an upper bunk; and that these defendants ignored and/or improperly modified the chrono. As a result, plaintiff fell and was injured. These allegations are sufficient to state a claim. See Akhtar v. Mesa, 698 F.3d 1202, 1213-14 (9th Cir. 2012).

Plaintiff also accuses Baker of denying him medical care after his December 6, 2015, fall. Similarly, when plaintiff suffered a seizure later that same day, Surace and Jones were aware of plaintiff's need for medical attention, but they ignored plaintiff. Plaintiff may proceed on these allegations.

Next, plaintiff accuses Ma of improperly discontinuing his anti-seizure and pain medication multiple times, often without notice and/or evaluation. Standing alone, these bare

13

allegations do not suggest deliberate indifference so much as negligence or even medical malpractice. It is axiomatic that medical malpractice, even when colored with gross negligence, does not violate the Eighth Amendment "merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see, e.g., Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 904-05 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). Rather, "there must be a conscious disregard of a serious risk of harm for deliberate indifference to exist." Toguchi, 391 F.3d at 1059 (internal citations omitted). Without further context, these allegations do not state a claim.

Several of plaintiff's other allegations also fail. For example, plaintiff's claim that Lewis denied his November 10, 2016, emergency request for medical attention is too vague to proceed. Plaintiff's allegations as to Long and Maalihan fails because plaintiff alleges that they did not evaluate or examine him upon Baker's orders; their failure to examine plaintiff, then, cannot reasonably be attributed to deliberate indifference. Plaintiff's accusation against Lelis fails since plaintiff alleges only that this defendant activated his personal alarm upon seeing that plaintiff needed medical attention. Lastly, plaintiff's claims against Robichaud and Macomber will be analyzed infra.

### G. Fourteenth Amendment Due Process

Plaintiff brings a due process claim against several individuals for their role in processing his administrative grievances. Prisoners, however, do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under federal law to process inmate grievances in any specific way. Plaintiff's claims premised on the processing and/or review of his grievances do not state a cognizable claim for a violation of his due process rights because there is no right to a particular grievance process or response. See, e.g., Towner v. Knowles, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights after defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, 2009

WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

It appears this claim is also premised, in part, on falsified documents, which, standing alone, does not state a cognizable constitutional claim. See, e.g., Higgins v. Medina, 2009 WL 3255268, *3 (E.D. Cal. 2009) (finding not cognizable plaintiff's due process claim arising from the falsification of reports and other documents relating to incident of excessive force because prisoners do not have an independent right, grounded in the Due Process Clause, to an accurate prison record).

### H. Fourteenth Amendment Equal Protection

#### a. Legal Standard

The Equal Protection Clause requires persons who are similarly situated to be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of L.A., 250 F.3d 668, 686 (9th Cir. 2001), or similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

#### b. Analysis

Plaintiff claims that the defendants violated his rights under the Equal Protection clause when they falsified the disciplinary and incident reports regarding his transfer to another cell and his placement in an upper-tier bunk. But plaintiff does not allege any facts showing that he was treated differently based on his membership in a protected class, or that similarly situated individuals were treated differently. Accordingly, he has failed to state a claim for violation of his rights under the Equal Protection clause.

////

**I. Conspiracy**

    **a. Legal Standard**

In the context of conspiracy claims brought pursuant to § 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. V. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under §1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act done by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

The Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere

allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

   b. **Analysis**

Plaintiff brings a conspiracy claim pursuant to 42 U.S.C. § 1985(3) and § 1986 against Lewis, Swain, Cross, Rodriguez, and Johnson. The complaint, however, is devoid of any factual allegations that there was some racial or class-based discriminatory animus by the defendants. Since plaintiff has not alleged a conspiracy claim under § 1985(3), he cannot state any claim for knowledge of and neglecting to prevent the conspiracy. Stephens v. Multnomah Cty. by & through Judicial Dep't, 678 F. App'x 517, 519 (9th Cir. 2017) ("A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985.") (quoting Karim-Panahi, 839 F.2d at 626).

## V. Conclusion

Plaintiff's complaint states the following claims: (1) a First Amendment retaliation claim against Lewis, Swain, Cross, Rodriguez, and Baker, and (2) an Eighth Amendment medical indifference claim against Lewis, Swain, Cross, Lesmeister, Johnson, Rodriguez, Leathem, Richardson, Gomez, Baker, Surace, and Jones. The remaining claims are not cognizable as pled.

The Court will grant Plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If Plaintiff chooses this latter option, the Court will issue findings and recommendations to dismiss the non-cognizable claims.

If Plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed.

If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient

factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claims found to be cognizable in this order; or
   c. Notify the Court in writing that he wishes to stand on his complaint as written; and

////

////

3. If Plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: March 7, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/jone2002.scrn